**CONSUMER LITIGATION LAW CENTER, APC**
September J. Katje, Esq. (SBN 227896)
100 N. Citrus St., Suite 408
West Covina, CA 91791
Telephone: (800) 787-5616
Fax: (888) 909-7947
sk@consumerlitigationlawcenter.com

Attorney for Plaintiffs,
JOHN HOKANSON, and
MARGARET HOKANSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HOKANSON and MARGARET HOKANSON, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A., AS TRUSTEE, FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006-NC4 ASSET-BACKED PASS-THROUGH CERTIFICATES; CARRINGTON MORTGAGE SERVICES, LLC, successor in interest to NEW CENTURY MORTGAGE; ATLANTIC & PACIFIC FORECLOSURE SERVICES, LLC; and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this Complaint adverse to Plaintiffs' title thereto, and DOES 1 through 25, inclusive, <br><br> Defendants. | Case No.: 2:12-cv-08752-JAK-SH <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

1

Plaintiffs, JOHN HOKANSON and MARGARET HOKANSON, herein submit their Opposition to Defendants' CARRINGTON MORTGAGE SERVICES, LLC ("CARRINGTON"), WELLS FARGO BANK, N.A., AS TRUSTEE, FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006-NC4 ASSET-BACKED PASS-THROUGH CERTIFICATES ("WELLS"), and ATLANTIC & PACIFIC FORECLOSURE SERVICES, LLC's ("A & P"), Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC").   Plaintiffs oppose Defendants' Motion to Dismiss on the grounds that their FAC does state valid causes of action and that Defendants' Motion to Dismiss is without merit.

The Opposition shall be based on this Opposition, the attached Memorandum of Points and Authorities, on the complete files and records of this action, and on such other oral and/or documentary evidence as may be presented at the hearing on the Motion.

Dated:  January 14, 2013                    CONSUMER LITIGATION LAW CENTER, APC


BY: /s/ September J. Katje_____
    September Katje
    Attorney for Plaintiffs,
    JOHN HOKANSON, and
    MARGARET HOKANSON

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 3

II.     STATEMENT OF FACTS ........................................................................... 3

III.    ARGUMENT ................................................................................................ 3

        A.      The Legal Standard for a Motion to Dismiss .................................... 3

        B.      Plaintiffs' Claims Are Timely .......................................................... 4

        C.      WELLS Is Successor In Interest To New Century ............................ 4

        D.      Plaintiffs Claim For Violation Of Fair Debt Collection Practices Act ................. 5

        E.      Plaintiffs' Second, Third, And Fourth Claims For Unfair Business Practices Stand 5

                1.      Plaintiffs' loan origination claims ......................................... 5

                2.      Plaintiffs' loan servicing claims ........................................... 5

                3.      Plaintiffs' foreclosure claims ............................................... 6

        F.      Plaintiffs' Claim For Fraud Stands ................................................... 7

        G.      Plaintiffs Claim For Violation Of RESPA ........................................ 9

        H.      Plaintiffs' Negligence Claim Stands ............................................... 11

        I.      Plaintiffs' Claim For Breach Of Implied Covenant Of Good Faith And Fair Dealing ................. 13

        J.      Plaintiffs' Quiet Title Claim Stands ............................................... 13

        K.      Plaintiffs' Declaratory Relief Claim Stands ................................... 14

IV.     CONCLUSION ........................................................................................... 15

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## **TABLE OF AUTHORITIES**

*Aguayo v. U.S. Bank* (9th Cir. 2011) 653 F.3d 912, 922…………………………...……4

*Biakanja v. Irving* (1958) 49 Cal.2d 647, 650………………………………………...10

*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248………………..…5, 6, 13

*Chancellor v. OneWest Bank* (N.D. Cal., May 22, 2012, C 12-01068 LB) 2012 WL 1868750...12

*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 211…………………………2, 3

*Garcia v. Ocwen Loan Servicing, LLC* (N.D. Cal., May 10, 2010, C 10-0290 PVT) 2010 WL 1881098………………………………………………………..………………12

*Gilligan v. Jamco Dev. Corp.* (9th Cir. 1997) 108 F.3d 246, 249……………………………...1

*Gerber v. Wells Fargo Bank, N.A.* (D. Ariz., Feb. 9, 2012, CV 11-01083-PHX-NVW) 2012 WL 413997………………………………………………………………………...……4

*Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993)…………………………………..1

*Holmberg v. Armbrecht* (1946) 327 U.S. 392, 397…………………………………...…1

*Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911)………………………………12

*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112-13…………………………………11

*Onofrio v. Rice*, 55 Cal.App.4th 413, 424 (1997)…………………………………..………9, 10

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)…………………1

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)……………………………………………1

**STATUTES**

12 C.F.R. §34.4(a)(10)…………………………………………………………....4

12 U.S.C. § 2605…………………………………………………………………7

Cal. Civil Code § 2923.5…………………………………………………………4, 5

Cal. Civil Code § 2923.6…………………………………………………..………9

Cal. Code Civ. Proc. §338(d)……………………………………………………2

Cal. U. Com. Code, § 9404……………………………………………..…………2

**TREATISES**

Cal. Prac. Guide Civ. Pro. Before Trial Ch. 6-B……………………………………..…10

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs were deceptively induced to enter into an unaffordable loan in 2006.  Since then Plaintiffs have been experienced wrongdoing at the hands of Defendants in the process seeking a loan modification, and in the foreclosure of their home.  As will be explained below, Plaintiffs adequately pled the causes of action in their complaint.  Therefore, Plaintiffs request the Court to overrule Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, as set forth below.

## II.     STATEMENT OF FACTS

Plaintiffs are the owners of the real property, their home, located at 1040 East 67th Street, Long Beach, California 90805 (hereinafter referred to as "Subject Property"). (FAC ¶ 3.)   On July 21, 2006, Plaintiffs obtained an adjustable rate mortgage for the principal sum of $388,000.00 from NEW CENTURY secured by a Deed of Trust, recorded on August 3, 2006 in Los Angeles County as instrument number 2006-1721501.  (FAC ¶ 26, 29.)

## III.     ARGUMENT

**A.     The Legal Standard for a Motion to Dismiss.**

Rule 12(b)(6) motions are viewed with disfavor, and accordingly, dismissals for failure to state a claim are "rarely granted."  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  The standard for dismissal under Rule 12(b)(6) is a stringent one.  "[A] complaint should not be dismissed for failure to state a claim unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (emphasis added).   The purpose of a Federal Rule 12(b)(6) motion is to test the formal sufficiency of the statement of the claim for relief in the complaint.  *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  The complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Plaintiffs' claims are wholly supported by factual allegations.  Consequently, Defendants' Motion to Dismiss should be denied.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**B.      Plaintiffs' Claims Are Timely**

Though the statutory period for fraud is three years (Cal. Code Civ. Proc. §338(d)), whenever a plaintiff has been injured by fraud and "'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered.'" *Holmberg v. Armbrecht* (1946) 327 U.S. 392, 397 (*quoting Bailey v. Glover*, 21 Wall. 342, 348.   As a result of the compounding half-truths, misrepresentations, omissions, and Defendants' failure to provide the Loan Documents in a timely fashion, Plaintiffs only reasonably discovered the acts committed herein upon receiving the Notice of Trustee's Sale recorded on May 1, 2012 when they noticed that the principal balance of the loan in the amount of $388,000.00 had increased to $430,222.00.  (FAC ¶ 128.)  Prior to this time, Plaintiffs had no notice that the principal balance of their loan could substantially increase as the negative amortization component of their loan was never disclosed to Plaintiff.   Actually, the loan documents themselves were carefully crafted so that the terms were well hidden and could be misconstrued by the average borrower.  Therefore, the statute of limitations on this matter should be tolled.

**C.      WELLS Is Successor In Interest To New Century**

> [T]he rights of an assignee are subject to both of the following:
> (1) All terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract.
> (2) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

Cal. U. Com. Code, § 9404.

WELLS was assigned Plaintiffs' loan by an Assignment of Deed of Trust dated October 20, 2008, and by an Assignment of Deed of Trust dated May 31, 2011.  (See Defendants' Request for Judicial Notice, Exhibits 4 & 10.)  Therefore, the rights of the assignee, WELLS, are subject to the terms of the agreement between the account debtor, Plaintiffs, and the assignor, New Century, and therefore WELLS is liable for Plaintiffs' origination claims.

/ / /

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**D.      Plaintiffs Claim For Violation Of Fair Debt Collection Practices Act**

Plaintiffs concede Defendants' argument on this claim, for purposes of this claim only.

**E.      Plaintiffs' Second, Third, And Fourth Claims For Unfair Business Practices Stand**

**1.      Plaintiffs' loan origination claims**

"The essential elements of fraud, generally, are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." *City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 211.

Plaintiffs were told that the terms of their loan, which differed from those they had discussed with Agent, were only temporary, and that new revised loan documents reflecting the correct fixed rate loan terms would be presented to them for signing in the near future, but that they must sign the adjustable rate loan presented to them at closing in order to get that process started. (FAC ¶ 23.) Corrected loan documents were never thereafter presented to Plaintiffs. (FAC ¶ 25.) Therefore, Plaintiffs were misled in the loan origination and have adequately pled unfair and deceptive business practices in this regards.

**2.      Plaintiffs' loan servicing claims**

On or about July 2007, due to the mortgage payment becoming unmanageable, Plaintiffs contacted the Defendant CARRINGTON, current servicer, for any options to avoid defaulting on the payment, how to avoid foreclosure, and inquired about a loan Modification. Plaintiffs followed the directive from CARRINGTON and applied for a loan Modification. Plaintiffs were told that they were to stop making payment in November 2007 in order to qualify. Thereafter, Defendant informed Plaintiff that they were approved for a Loan Modification and started making the monthly payment of $2,300.00. Although, Plaintiff understood the plan was to become permanent after a sequence of good faith payments, Plaintiffs paid under the Modification for almost one (1) year. No permanent loan modification was ever offered. (FAC ¶ 28.)

On or about December 2009, Plaintiffs received another Modification offer of $1,721.00 per month. Plaintiffs again in good faith paid the payment and continued to pay for about twelve (12) months. However, the Lender did not include the taxes or insurance, which resulted in more

arrears accruing to the balance of the Mortgage loan.  Yet again, despite Plaintiffs efforts to make payments on the temporary loan modification for approximately one year, no permanent loan modification was ever offered.  (FAC ¶ 29.)

In 2011, Plaintiffs received another Modification offer.  The payment was $998.00 per month and Plaintiffs were satisfied with the payment.   However, thereinafter the Lender had told Plaintiffs that the approval was invalid and Plaintiffs' payment would be rejected if submitted because the Lender had three new programs that CARRINGTON would be implementing. Therefore, Plaintiffs would have to wait for CARRINGTON to start the new programs. Although Plaintiffs were ready, willing and able to enter into the loan modification Plaintiffs were offered, Plaintiffs were left disappointed and frustrated that the Defendant can offer the Plaintiffs assistance under a program that their financials appropriately qualified them for and then just be rescinded without any type of justification, except that the lender was not going to honor it.   Such acts by Defendant is further evidence of their violation of their unfair and deceptive practices.   (FAC ¶ 30.)

Plaintiffs applied more than nine times for a loan Modification and cooperated with every request from CARRINGTON to save their home.  Notwithstanding the Plaintiffs cooperation with Defendants and Plaintiffs repeated performance under the terms of the temporary loan modifications offered, Plaintiffs never received any type of permanent assistance.   Thus, Defendants' loan servicing perpetuated deceptive and unfair business practices by failing and refusing in good faith to provide Plaintiffs with a permanent loan modification pursuant to the provisions of the Federal HAMP program or any other internal loan modification program for which they were qualified.  (FAC ¶¶ 30 & 31.)

### 3.    Plaintiffs' foreclosure claims

Defendants argue that "[u]nder the NBA [National Bank Act], a national bank may exercise its federally authorized powers 'without regard to state law limitations concerning… [p]rocessing, origination, *servicing*, sale or purchase of, or investment or participation in, mortgages.' 12 C.F.R. §34.4(a)(10) (emphasis added)."  (Motion to Dismiss, pg. 11, lines 7-10.)

///

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

California Civil Code § 2923.5 deals with foreclosure, not with servicing.   12 C.F.R. §34.4(a)(10) conspicuously refrains from mentioning foreclosure –  "servicing" is not foreclosure.   Furthermore, Defendants may not interpret the NBA and the concomitant Office of the Comptroller of the Currency (OCC) regulations by comparing them to the Home Owners Loan Act (HOLA) and the regulations of the Office of Thrift Supervision.   "Despite the similarity in language between the OTS's and OCC's preemption regulations, the Ninth Circuit rejects applying the OTS/HOLA analysis to OCC/NBA questions."  *Gerber v. Wells Fargo Bank, N.A.* (D. Ariz., Feb. 9, 2012, CV 11-01083-PHX-NVW) 2012 WL 413997; *Aguayo v. U.S. Bank* (9th Cir. 2011) 653 F.3d 912, 922 <u>cert. denied,</u> (U.S. 2012) 133 S.Ct. 106.  So, even if some California District Courts interpret the OTS regulations under HOLA to preempt Cal. Civil Code § 2923.5, a similar interpretation should not for that reason be applied to the NBA and its attendant OCC regulations.

**F.     Plaintiffs' Claim For Fraud Stands**

> [T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248.

Defendants argue that Plaintiffs have not met the enhanced pleading burden of a fraud claim.  (Defendants' Motion to Dismiss, pg. 13, lines 12-24.)   Contrary to Defendants' arguments, however, Plaintiffs did in fact meet the enhanced fraud pleading burden: Plaintiffs understood and believed they had applied for a fixed rate mortgage loan to refinance their property, and instead were steered by authorized agents and representatives of WELLS and CARRINGTON's predecessors in interest, their agents and representatives, into these ARM Loans, which included provisions for highly volatile adjustable interest rates. This steering by individual loan officers and representatives of New Century occurred in the period of time

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

between when Plaintiffs first inquired about obtaining refinance loans for the property, and to and through the loan closing, and included the following events and representations by the individual employee and California Department of Real Estate licensed representative of Defendant.  (FAC ¶ 22.)

Plaintiffs discussed with an agent of WELLS and CARRINGTON's predecessor in interest that the loan documents were incorrect and not what they requested. After extensive discussion, the agent told Plaintiffs, in substance, that they "should not worry about these loan documents, since the lender is aware that they are incorrect, and that new revised loan documents reflecting the correct fixed rate loan terms would be presented" to Plaintiffs for signing in the near future; however, Plaintiffs must sign the documents presented as adjustable rate loan documents in order to get that process started. Plaintiffs were also told by the agent that the reason for the mix-up was the recent change in market products, and assured Plaintiffs that the mix-up would be corrected, but that it would take a few weeks. In the course of this conversation, the agent made explicit and untrue oral statements to Plaintiffs that such loan documents would be replaced by fixed rate loans well suited to Plaintiffs' needs and desires, that the Plaintiffs would enjoy the benefit of low monthly payments and low interest rates for the entire life of the loan thereafter. The agent also specifically confirmed that he was authorized to speak on behalf of the lender with respect to the loan transaction.  (FAC ¶ 23.)

Plaintiffs felt pressured into signing the loan documents. In addition, they were rushed to quickly sign the loan documents and did so within fifteen minutes (FAC ¶ 24), a wholly inadequate amount of time within which to peruse and understand the loan documents.

Thereafter, corrected loan documents were never thereafter presented to Plaintiffs, and Plaintiffs instead were saddled with the highly expensive and unfair loan terms, contrary to the Plaintiffs' reliance on the representations of the Loan Officer by and on behalf of all defendants. (FAC ¶ 25.)

While the precise identities of all of the corporate employees responsible are not known to Plaintiffs, WELLS and CARRINGTON possess knowledge superior to Plaintiffs' of who was

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

responsible for the deceptive practices perpetrated upon Plaintiffs.   See *Boschma*, 198 Cal.App.4th at 251.

Plaintiffs further alleged that Defendants intentionally, willfully, and wantonly engaged in these acts with the purpose of misleading Plaintiffs into signing an unaffordable loan agreement, and effectively concealed material facts, for the purpose of inducing Plaintiffs to part with their real and personal property.  (FAC ¶ 134.)

As a result of Defendants' deceptive conduct Plaintiffs lost thousands of dollars of equity in their home.  (FAC ¶ 92.)  *Boschma*, 198 Cal.App.4th at 251 ("plaintiffs' allegation of lost equity in their homes is sufficient at this stage of the proceedings to overrule defendant's demurrer").

Therefore, Plaintiffs have adequately pled fraud.

**G.   Plaintiffs Properly Pled a Violation of Civil Code §2923.5**

As set forth in detail in Section E.3. above, Defendants have clearly not satisfied their obligation under Civil Code §2923.5, and Civil Code §2923.5 is not preempted by the National Bank Act.

In addition, in order to state a violation of Cal. Civil Code section 2923.5(a)(2), Plaintiff would have to allege that there has been no actual contact that complied with the requirements set forth in section 2923.5(a)(2).  See *Chancellor v. OneWest Bank* (N.D. Cal., Sept. 4, 2012, C 12-01068 LB) 2012 WL 3834951 (plaintiff was in contact with defendant regarding loan modification prior to filing of notice of default, yet the court held plaintiff's cause of action for noncompliance with section 2923.5 was sufficient at that stage of the pleadings). The Court found that the Plaintiff's allegations contradicted the attestation filed with the Notice of Default which was sufficient to survive the pleading stage.  *Id.* at 5.   Here, although the Plaintiffs were in contact with Defendants for the purposes of seeking a loan modification, Defendants did not deal with the Plaintiffs in good faith as required by law, as Defendants disingenuously approached the loan modification process as Plaintiffs repeatedly made payments on temporary loan modifications for approximately two years, showing their good faith efforts and ability to

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

make payments on a loan modification, yet Defendants repeatedly refused to offer Plaintiffs a permanent loan modification and permanently avoid foreclosure on Plaintiffs' home.  Also, the last time Defendant CARRINGTON offered Plaintiffs a temporary loan modification they thereinafter rescinded such offer stating they were implementing new programs.  Such actions by Defendants do not show due diligence in an attempt to avoid foreclosure.   Therefore, Defendants' Motion to Dismiss on this claim should be overruled.

**H.**   **Plaintiffs Properly Pled a Claim For Violation Of RESPA**

Defendants argue that Plaintiffs' correspondence of June 20, 2012, did not qualify as a Qualified Written Request (QWR) under the Real Estate Settlement Procedures Act (RESPA). (Motion to Dismiss, pg. 16, lines 17-19.)

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error **_or_** *provides sufficient detail to the servicer regarding other information sought by the borrower.*

12 U.S.C. § 2605 (emphasis added).

Plaintiffs' QWR provided: "Please provide my office a specific breakdown of all the fees and an explanation of why such charges were incurred. Please also provide my client with any and all notices that have not been provided which my client was legally entitled to receive."

> Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
> **(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> **(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

**(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; . . . or

**(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

**(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer . . .

12 U.S.C. § 2605.

CARRINGTON did not respond to Plaintiffs' QWR, in the manner prescribed above. CARRINGTON's July 27, 2012 letter was not in response to Plaintiffs' QWR, but rather a validation-of-debt letter Plaintiffs had sent to CARRINGTON in addition to the QWR. And, furthermore, CARRINGTON's response to Plaintiffs' validation-of-debt letter does not provide responses to the information sought in Plaintiffs' QWR.

In addition, Defendants' failure to comply with 12 U.S.C. § 2605(e)(3) regarding Defendants' prohibition from reporting Plaintiffs' overdue payments to any consumer reporting agency has caused significant injury to Plaintiffs' credit score and prevented them from obtaining additional credit during this time period as a result of Defendants' violation of this provision.  (FAC ¶ 161.)  Plaintiffs also have been unable to properly dispute overcharges on their account due to Defendant's failure to provide Plaintiffs with the requested information and documentation relating to such charges. Plaintiffs' have thus adequately alleged damages from RESPA violations.

Therefore, Plaintiffs have adequately pled a cause of action for violation of RESPA.

**I.**    **Plaintiffs' Negligence Claim Stands**

Defendants argue that no legal duty was owed Plaintiffs with regard to loan origination and loan modification related conduct.  (Motion to Dismiss, pg. 20, lines 9-11.)

In California a six-factor test is used to determine whether a financial institution owes a borrower a duty of care:  (1) the extent the transaction was to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered the injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

The loan was undoubtedly intended to affect Plaintiffs because the outcome of the loan Application determined what type of loan Plaintiffs would qualify for.  (FAC ¶ 168.)  The loan modification was intended to affect Plaintiffs because the outcome of the loan modification application determined whether or not Plaintiffs would be able to prevent the foreclosure on their Property.  (FAC ¶ 171.)

It was foreseeable that overstating Plaintiffs' income in the Loan Application and providing Plaintiffs with a loan for which they were not qualified would harm Plaintiffs in that it increased the likelihood that they would default on the loan, their home would be foreclosed on, and/or they would suffer credit damage.  The monthly mortgage payment was initially $2,481.93, almost half of Plaintiffs' monthly income.  (FAC ¶ 169.)  It was foreseeable that not processing Plaintiffs' loan modifications in a reasonable manner, particularly the lack of timeliness, would harm Plaintiffs because it increased the likelihood that they would default on the loan, their home would be foreclosed on and/or they would suffer credit damage.  (FAC ¶ 173.)  The injury is certain because Plaintiffs lost an opportunity to obtain a loan that they could afford and there are now foreclosure proceedings instituted against them.  (FAC ¶ 170.)   As a result of Defendants' failure to reasonably process Plaintiffs' loan modification applications, Plaintiffs were deprived of the opportunity to seek alternative measures of avoiding foreclosure. (FAC ¶ 177.)   There is a close connection between the misconduct alleged in processing Plaintiffs' loan-modification requests and the injury they suffered because of the failure of Defendants to apply consistent methods in offering and reviewing loan modifications resulting in consistent delays and ultimate denial.  (FAC ¶ 174.)  There is a public policy aimed at preventing future harm to home loan borrowers embodied in Cal. Civil Code § 2923.6.  (FAC ¶ 176.)  See *Garcia v. Ocwen Loan Servicing, LLC* (N.D. Cal., May 10, 2010, C 10-0290 PVT) 2010 WL 1881098; see also *Chancellor v. OneWest Bank* (N.D. Cal., May 22, 2012, C 12-01068 LB) 2012 WL 1868750.

Furthermore, "[t]he California legislature has determined that a person who undertakes an activity owes a duty to others to exercise ordinary care or skill." *Garcia*, 2010 WL 1881098 * 4. Here, Defendants undertook to review Plaintiffs applications and supporting documentation for a

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

loan modification.  (FAC ¶¶ 101-104.)  By doing so, Defendants were obligated to review Plaintiffs' applications using ordinary care, which Plaintiffs allege they did not do.  (FAC ¶ 173.) Moreover, "Defendant certainly had a legal duty under TILA to clearly and conspicuously describe the terms of the loan to plaintiffs."  *Boschma,*198 Cal.App.4th at 250.  In this matter, once Defendant undertook to accept and review Plaintiffs' loan modification application, Defendant owed Plaintiffs a duty to exercise the ordinary care or skill in handling and processing such loan modification applications.  Here, Defendant did not properly exercise such ordinary care or skill, and was therefore negligent in that regard.

Therefore, Defendants did owe Plaintiffs a duty of care, and thus Plaintiffs have adequately pled a claim for negligence.

**J.**   **Plaintiffs' Claim For Breach Of Implied Covenant Of Good Faith And Fair Dealing**

Defendants' misconduct induced Plaintiffs to enter into the prejudicial loan agreement. (FAC ¶ 86.)  Then, when Plaintiffs began to experience the inevitable financial harm, they sought to remedy it yet continue to meet their obligations under the loan agreement by seeking a loan modification.  (FAC ¶ 185.)  Defendants, however, prevented Plaintiffs from fulfilling their obligations under the loan agreement by dealing with Plaintiffs in bad faith during the loan modification review process (FAC ¶ 189.)  Defendants clearly allege they have a right to the Deed of Trust in that they allege they have they have the right and ability to foreclose on the property.  Therefore, if Defendants claim that a valid contract does not exist then this court must find that Defendants do not have the right or ability to foreclose.  Therefore, the court should find Defendant's Motion to Dismiss should be overruled in this regard.

**K.**   **Plaintiffs' Quiet Title Claim Stands**

Defendants argue that Plaintiffs quiet title claim fails because they have not alleged tender.  (Motion to Dismiss, pg. 23, lines 1-2.)

Plaintiffs, however, are not required to provide tender in this matter as this action attacks the validity of the underlying debt.  There are recognized exceptions to the tender requirement. *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112-13.  Tender may not be required where the action attacks the validity of the underlying debt, since it would constitute an affirmation of

the debt. *Onofrio v. Rice*, 55 Cal.App.4th 413, 424 (1997). Plaintiffs have multiple claims stemming from the loan's origination and the fraud committed therein. Plaintiffs allege numerous instances of misrepresentation and concealment in the origination of their loan. Plaintiffs' fraud claim attacks the validity of the underlying debt. As such, alleging tender would constitute an affirmation of the debt and invalidate Plaintiffs' allegations in their Complaint.

In addition, there is a general equitable exception that "tender may not be required where it would be inequitable to do so." *Onofrio*, 55 Cal.App.4th at 424 (quoting 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust & Mortgages § 9:154, p. 508-509, fn. 86.) Tender may not be required if it would evidence injustice and hardship of the right to attack the sale if it were made dependent upon an offer to pay the whole debt. *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911). The court in *Onofrio* did not require the plaintiff to tender the amount necessary to cure the default in support of plaintiff's claims for wrongful foreclosure proceedings. *Onofrio*, 55 Cal.App.4th at 424. Similarly here, it would be an injustice and hardship to require Plaintiffs to tender the full loan amount of the loan in order to attack the sale because the loan arose from fraud. Therefore, Plaintiffs are not required to allege tender.

**L.    Plaintiffs' Declaratory Relief Claim Stands**

"A complaint for declaratory relief is sufficient 'if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument ... and requests that the rights and duties of the parties be adjudged by the court.' [*Wellenkamp v. Bank of America* (1978) 21 C3d 943, 947, 148 CR 379, 381; *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 CA4th 592, 605, 98 CR2d 277, 285–286]." Cal. Prac. Guide Civ. Pro. Before Trial Ch. 6-B.

An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties regarding the loan or the foreclosure. These disputes concern but are not limited to the ownership rights and the validity of the commencement of the foreclosure process. Plaintiffs argue that pursuant to the loan, Defendants do not have authority to foreclose upon and sell the Property. Defendants contend they may properly foreclose upon the Property. (FAC ¶¶ 205-208.)

Plaintiffs, therefore, request a judicial determination of the rights, obligations and interest of the parties with regard to the Subject Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interest with regard to the Subject Property.  (FAC ¶ 209.)

Plaintiffs' claim for declaratory relief therefore seeks a remedy distinct from their prior causes of action, and Defendants' Motion to Dismiss should be overruled on this matter.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.   In the alternative, Plaintiffs request the court allow them sufficient time to amend their First Amended Complaint to allege additional facts sufficient to plead any inadequately pled claims against these Defendants.

Dated:  January 14, 2013                CONSUMER LITIGATION LAW CENTER, APC


BY:  _/s/ September J. Katje_____ _____
                                        September Katje
                                        Attorney for Plaintiffs,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT